

# ALLSTATE R3001C EXCLUSIVE AGENCY AGREEMENT

This Agreement is between ALLSTATE INSURANCE COMPANY and such affiliates and subsidiaries as are named in the Supplement for the R3001 Agreement (referred to in this Agreement as "the Company") and _____ (referred to in this Agreement as "Agency").

The Company and Agency agree as follows:

I. **AUTHORITY:**

   A. Effective_____,_____, the Company appoints Agency as its agent to represent the Company in the Exclusive Agency Program. Agency is authorized on behalf of the Company, during the term of this Agreement, to receive and accept, subject to such restrictions on binding authority as may be established by the Company, applications for insurance covering such classes of risks located in the state(s) of_____ as the Company may from time to time authorize to be written. Agency is also authorized to sell products specified by the Company and through the companies specified in the Supplement for the R3001 Agreement (referred to in this Agreement as "Company Business"). The Company will own all business produced under the terms of this Agreement. Agency will not represent itself as having any authority other than that specifically granted to it by the Company. Agency will not alter any contract or incur any expense or obligation for the Company without prior written approval from the Company.

   B. This Agreement is the sole and entire agency agreement between the Company and Agency, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and Agency and any of its officers, directors, shareholders, members, and employees. This Agreement also supersedes any prior oral statements and representations by the Company and any prior written statements and representations by the Company in letters, manuals, booklets, memoranda, or any other format.

   C. The Supplement for the R3001 Agreement ("Supplement") and the Exclusive Agency Independent Contractor Manual ("EA Manual"), and the Allstate Agency Standards ("Agency Standards") as they may be amended from time to time, are expressly incorporated in their entirety as part of this Agreement. The Company reserves the right to amend the Supplement, EA Manual, and Agency Standards at any time without prior notice to Agency, except that notice regarding changes to commission amounts will be given as indicated in Section XV.

   D. The relationship between the Company and Agency and its officers, directors, shareholders, members, employees, and other persons working in connection with this Agreement, will be that of an independent contractor for all purposes. Agency will not represent that it has authority to act on behalf of the Company or enter into any contract on behalf of the Company, except for contracts of insurance or other contracts as expressly authorized by this Agreement.

   E. Agency will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company. Agency may, however, write applications for insurance under an assigned risk, cooperative industry, or government established residual market plan or facility in accordance with the Company's rules and procedures.

F. The Company will determine in its sole discretion all matters relating to its business and the operation of the Company including, but not limited to, the following:

   1. The determination of contract forms and provisions, premiums, fees, and charges for insurance and other Company Business;
   2. The acceptance or rejection of any application;
   3. The termination or modification of any contract or the refusal to renew any contract;
   4. The limitation, restriction, or discontinuance of the writing or selling of any policies, coverages, lines, or kinds of insurance or other Company Business;
   5. The obtaining of any licenses of the Company or the Company's withdrawal from any state, jurisdiction, or territory; and
   6. The type and quality of customer service received by Company policyholders.

G. Agency represents and warrants that prior to the execution of this Agreement, Agency has provided to the Company the full names and addresses of its officers, directors and any persons who own any shares of or interest in Agency. Thereafter, Agency shall promptly furnish to the Company the full names and addresses of any new officers, directors, or owners.

II. **DUTIES AND CONDITIONS:**

A. Agency will act as an agent of the Company for the purpose of soliciting, selling, and servicing insurance and other Company Business in accordance with the provisions of this Agreement. As an agent of the Company, Agency will provide customer service, including the collection of payments, for any and all Company policyholders and will assist in claims administration in accordance with the Company's rules and procedures.

B. Agency will meet certain business objectives established by the Company in the areas of profitability, growth, retention, customer satisfaction and customer service. Agency will build and maintain a profitable book of business, assist the Company in its efforts to achieve market penetration for all forms of insurance offered by the Company and other Company Business, and service the Company's customers in a manner consistent with the Company's goodwill, reputation, and overall business strategy.

C. Agency will record, transmit, and process insurance and Company Business in the manner prescribed in the then current provisions of the Supplement.

D. Agency agrees to comply with any and all applicable federal, state, or local laws, rules, regulations and ordinances affecting its operation and warrants that Agency, its officers, directors, shareholders, members, and employees will maintain any required agent licenses in the state or states in which Agency is appointed to represent the Company.

E. This Agreement is being entered into with Agency in reliance upon and in consideration of the skills, qualifications, and representations of_____(referred to in this Agreement as "Key Person"). Agency agrees that it will employ Key Person to provide services under this Agreement for its term.

F. The Company recognizes that Agency may, in its sole discretion, arrange to have business conducted at its sales location in Key Person's absence by its other employees or other persons and that the time during which Key Person is physically present at Agency's sales location is entirely in Agency's sole discretion. Key Person must, however, remain actively involved in the conduct of business at Agency's sales location.

Pls. Exhibit 1

G. The Company shall at all times be entitled to conclusively rely upon the authority of Key Person (or in the event of the death or incapacity of Key Person, his executor or personal representative) to bind Agency and its officers, directors, shareholders and members, regardless of any directions received by the Company from any person or entity which conflict with directions received from Key Person, unless the Company is properly served with an order of a court of competent jurisdiction abrogating Key Person's authority and designating an alternate authorized representative to act on behalf of Agency under this Agreement.

H. Agency agrees that the Company will have the authority to use the name of Agency or Key Person and the Key Person's signature, or facsimile thereof, on policy documents and customer communication materials.

I. Agency agrees to maintain a professional business relationship with the Company, and, when requested, to meet with Company representatives at mutually convenient times to discuss various business topics. Agency also agrees that, because it is conducting business with the public under the Allstate name, Company representatives shall be permitted access to its sales location to review compliance with this Agreement during the business hours of that sales location.

J. Agency agrees that, as requested by the Company, it will demonstrate its knowledge of the Company products it is authorized to sell, as well as of federal, state, or local laws, rules, regulations and ordinances affecting its operation. If Agency is unable to demonstrate its knowledge of any product, the Company reserves the right to deny Agency the authority, or withdraw Agency's existing authority, to sell that product, until Agency demonstrates such knowledge.

III. **AGENCY EMPLOYEES:**

A. Agency has no authority to employ persons on behalf of the Company, and no employee of Agency will be deemed to be an employee or agent of the Company, such employees at all times remaining Agency's employees. Agency has sole and exclusive control over its labor and employee relations policies, and its policies relating to wages, hours, and working conditions of its employees. Agency has the sole and exclusive right to hire, transfer, suspend, lay off, recall, promote, assign, discipline, and discharge its employees.

B. Agency is solely responsible for all salaries and other compensation of all its employees and will make all necessary salary deductions and withholdings from its employees' salaries and other compensation. Agency is solely responsible for the payment of any and all contributions, taxes, and assessments, and all other requirements of the federal Social Security, federal and state unemployment compensation, and federal, state, and local withholding of income tax laws on all salary and other compensation of its employees.

C. Agency will comply with all other contracts, federal, state or local laws, ordinances, rules, or regulations regarding its employees, including federal or state laws or regulations regarding minimum compensation, overtime, and equal opportunities for employment. This includes, but is not limited to, Agency's warranty and agreement to comply with the terms of the federal and state civil rights acts, Age Discrimination in Employment Act, Americans With Disabilities Act, Occupational Safety and Health Act, Immigration Reform and Control Act, and the Fair Labor Standards Act.

D. Agency agrees and warrants that its employees, while working in connection with this Agreement, will comply with any and all applicable federal, state, or local laws, rules, regulations, and ordinances.

3

Pls. Exhibit 1

### IV. COMPANY PROPERTY, CONFIDENTIALITY:

A. The Company will furnish Agency such signs, forms, manuals, records, and other materials and supplies as the Company deems advisable to assist Agency. All such property and information furnished by the Company will remain the property of the Company. In addition, the Company will offer, at Agency's expense, such additional materials and supplies as the Company feels may be helpful to Agency.

B. Agency agrees that it will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information or any information containing trade secrets concerning any matters affecting or relating to the pursuits of the Company, except upon direct written authority of the Company. Furthermore, upon termination of this Agreement, Agency agrees to treat as confidential and not to disclose, either directly or indirectly, to any third party any confidential information or trade secrets of the Company.

C. Agency agrees that it will not disclose or grant access to any confidential information or trade secrets to any of its employees or other persons providing services for it in connection with this Agreement, unless such employee or other person has signed a copy of the Confidentiality and Non-Competition Agreement, attached as Appendix A if Key Person and Appendix B if other than Key Person. Appendix B is a sample copy of the electronic version of the document that must be transmitted to the Company.

D. Confidential information includes, but is not limited to: business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public. All such confidential information is wholly owned by the Company. Such confidential information may be used by Agency only for the purposes of carrying out the provisions of this Agreement.

E. Any confidential information or trade secrets recorded on paper, electronic data file, or any other medium, whether provided by the Company or by Agency, is the exclusive property of the Company, as is any such medium and any copy of such medium.

F. Agency recognizes that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. Agency agrees that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Agency waives any defense to an application for such order, except that the violation did not occur. Agency agrees that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

### V. SALES LOCATION:

A. Agency may select its sales location, within a geographical area specified by the Company, subject to Company approval. Initially, Agency has selected the location at _____ and such sales location has been approved by the Company. Agency agrees that it will not establish any additional sales location without the prior written approval of the Company. Agency acknowledges that it has no exclusive territorial rights in connection with its sales location.

B. Agency agrees to keep its sales location open for business as appropriate in the market to provide a proper level of customer service. As a minimum, Agency agrees to operate its sales location consistently with the Agency Standards.

C. Agency is authorized to sell insurance offered by the Company and Company Business only in the state containing its sales location and other states in which Agency has been authorized to act as a Company agent.

## VI. ADVERTISING:

A. The Company will advertise its products and provide promotional material in accordance with its advertising policies. Agency may also advertise in its sole discretion, subject to the requirements in paragraph B. below.

B. Agency will submit all signs and advertising copy, including, but not limited to, sales brochures, display advertisements in telephone directories, newspaper advertisements, radio and television commercials, electronic media displays, all sales promotional plans and devices, and all other materials to the Company for approval, if they use or contain any reference to any service mark or trade name of the Company. Agency will not use any such advertising material or sales promotional plan or device without obtaining prior written approval from the Company. The Company has the right to disapprove any or all of the aforesaid advertising forms and other materials insofar as they, in the exclusive judgment of the Company, do not conform to Company policy regarding use of Company service marks or trade names; may subject the Company to liability or loss of goodwill; may damage the reputation of the Company or Company customer relations; may fail to adhere to the requirements of any federal, state, or local governmental rules, regulations, or laws; may fail to conform to community or Company standards of good taste and honest dealing; or may be detrimental to the business interests of the Company.

## VII. SERVICE MARK AND TRADE NAME PROTECTION:

A. Agency agrees to cooperate fully in the quality control program conducted by the Company relating to the use of its service marks and trade names and the nature and quality of services rendered and goods distributed under its service marks and trade names. The Company will have the right to specify, delineate, or limit the services or goods in connection with which Agency may use any of its service marks or trade names. In the event that the nature or the quality of the services or goods in connection with which Agency uses any of the service marks or trade names of the Company is not acceptable to the Company, then the Company will have the right to require Agency to institute appropriate procedures to correct any deficiencies noted by the Company.

B. Agency agrees, at the request and expense of the Company, to assist the Company in protecting and enforcing the rights of the Company in and to any and all of its service marks and trade names which Agency may then be using.

C. Agency will not in any manner encumber, alienate, license, or transfer to any other entity any right whatsoever concerning the service marks or trade names the Company authorizes the Agency to use in the performance of this Agreement, except as permitted in Section XVI.

D. Agency recognizes that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. Agency agrees that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Agency waives any defense to an application for such order, except that the violation did not occur. Agency agrees that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

## VIII. EXPENSES:

Agency will be responsible for the payment of all expenses that it incurs in the performance of this Agreement including, but not limited to: expenses for its sales location, supplies not furnished by the Company, compensation of its employees or other assisting persons whom it engages, telephone, postage, and advertising expenses incurred at its direction, and all other charges and expenses.

## IX. TELEPHONE:

All telephone numbers used in connection with business conducted pursuant to this Agreement are the property of the Company.

## X. INDEMNIFICATION:

A. The Company will defend and indemnify Agency against liability, including the cost of defense and settlements, imposed on Agency by law for damages sustained by policyholders and caused by acts or omissions of the Company, provided that Agency has not caused or contributed to cause such liability by its acts or omissions. Agency agrees, as a condition to such indemnification, to notify the Company promptly of any claim or suit against it and to allow the Company to make such investigation, settlement, or defense as the Company deems prudent. The Company reserves the right to select counsel to represent Agency in connection with any such claim or suit. Agency also agrees to cooperate fully with the Company in any such investigation, settlement, or defense.

B. Agency will indemnify the Company against liability, including the cost of defense and settlements, imposed on the Company by law for damages sustained by any person and caused by the acts or omission of Agency, its officers, directors, shareholders, members, employees, including Key Person or other persons working in connection with this Agreement, provided that the Company has not caused or contributed to cause such liability by its acts or omissions. The Company agrees, as a condition to such indemnification, to notify Agency promptly of any such claim or suit against the Company. The Company reserves the right to select counsel to represent it in connection with any such claim or suit and to make such investigation or settlement as the Company deems prudent.

## XI. INSURANCE:

A. Agency agrees that it will, at its sole expense, obtain and maintain during the term of this Agreement policies of insurance as described in the EA Manual, as may be amended from time to time. Such policies must be obtained from companies satisfactory to the Company and must be adequate to protect against all expenses, claims, actions, liabilities, and losses related to the subjects covered by the required policies.

B. Where specified, each policy must name the Company as an additional insured and must contain a severability of interest/cross liability endorsement. Each policy must also expressly provide that it will not be subject to material change or cancellation without at least thirty (30) days prior written notice to the Company.

C. Agency must furnish the Company with proof of insurance upon request by the Company. If, in the Company's opinion, such policies do not afford adequate protection for the Company, the Company will so advise Agency and if Agency does not furnish evidence of acceptable coverage within fifteen (15) days after being requested to do so by the Company, the Company will have the right to obtain additional insurance at Agency's expense and deduct the cost of such insurance plus a processing fee from monies owed Agency by the Company.

## XII. FINANCIAL INFORMATION:

Agency shall maintain all books and records relating to the business under this Agreement including, but not limited to, all checkbooks, check registers, deposit receipts, and general ledgers for a period of not less than five years after the close of the fiscal year to which they relate. All of the foregoing records shall be open and available for inspection or audit at any time during Agency business hours without notice by the Company or its designated auditors and Agency shall have the duty to cooperate fully with the party(ies) making such inspection or audit.

## XIII. POLICIES IN AGENCY'S ACCOUNT:

Policies which are credited to Agency's account are described in the Supplement. While this Agreement is in effect, the Company will leave in Agency's account all policies credited to such account so long as the policyholder resides within a state in which Agency is authorized to act as a Company agent, except that the Company may remove any policy from Agency's account at the request of a policyholder.

## XIV. MONEY COLLECTED BY AGENCY:

All payments collected or received by Agency in the performance of this Agreement are the property of the Company, will be treated as trust funds, and will be promptly transmitted to the Company without deduction for any purpose in the manner specified by the Company. Agency must maintain accurate records and current remittance reports which may be inspected by the Company at any time without notice and which shall be submitted to the Company in accordance with its rules and procedures.

## XV. COMPENSATION:

A. The sole compensation to which Agency will be entitled for services rendered pursuant to this Agreement will be the commissions set forth in the Supplement, as may be amended from time to time. All commissions will be paid solely to the Agency, except as described in Section XIX, below. The Company will pay Agency its commissions at the time and in the manner set forth in the Supplement. However, due to the inherent uncertainty of business conditions, the Company reserves the right to increase or decrease any commission amounts and to change the commission rules. If the Company changes commission amounts, it will provide Agency with written notice of the changes at least ninety (90) days prior to the date on which they are to become effective.

B. The Company may provide Agency with such bonuses, awards, prizes, and other remuneration based on performance, if any, as it may prescribe in its sole discretion.

C. If any application for insurance is rejected, or any policy is surrendered or canceled, in whole or in part, for any reason, before the expiration of the policy period, or if any premium is reduced or any overpayment made to Agency, or if any premium paid is not earned by the Company, the commissions paid to Agency on the amount returned or credited to the policyholder, or the amount overpaid to Agency, will constitute an indebtedness of the Agency to the Company and will be charged to Agency or recovered from Agency by reducing any future commissions, awards, or bonuses due Agency.

Pls. Exhibit 1

XVI. **TRANSFER OF INTEREST:**

   A. Agency may not execute a transfer of its interest in this Agreement without the prior written approval of the Company. A transfer of interest in this Agreement is described in the Supplement and EA Manual and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it. Neither Agency, nor any shareholder or member of Agency, shall transfer any shares or interest in Agency, including, but not limited to, any sale, assignment, conveyance, or the granting of any lien, security interest, pledge, or mortgage thereof, without the prior written approval of the Company. Agency has the obligation to notify the Company of a proposed transfer and to request Company approval.

   B. Agency has an economic interest, as defined in this Agreement and the Incorporated Supplement and EA Manual, in its Allstate customer accounts developed under this Agreement. Subject to the terms and conditions set forth in this Agreement and the Incorporated Supplement and EA Manual, Agency may transfer its entire economic interest in the business written under this Agreement upon termination of this Agreement by selling the economic interest in the business to an approved buyer. The Company retains the right in its exclusive judgment to approve or disapprove such a transfer. Any failure to disclose and obtain the prior written approval of the Company for any transfer of Agency's interest in this Agreement or any share or interest in Agency shall constitute a breach of this Agreement and cause for termination of this Agreement.

   C. Approval of a proposed transfer of Agency's entire interest in this Agreement will be conditioned upon the termination of this Agreement and the execution of a then current agency agreement by the proposed transferee.

   D. Policies in Agency's account (Section XIII. above) will be transferred to an approved transferee.

XVII. **TERMINATION OF AGREEMENT:**

   A. This Agreement will be terminated automatically:

      1. On the effective date of any transfer of Agency's entire interest in this Agreement, whether approved or not, as described in Section XVI. above;

      2. Upon the death or permanent incapacity of Key Person;

      3. On the date Key Person ceases to be employed by Agency;

      4. Upon the loss of any required agent license of Agency or Key Person;

      5. Upon the dissolution of Agency; or

      6. Upon the surrender of, or the election not to renew, the Company's license to sell insurance in all lines in the state in which Agency's sales location is located or the discontinuation of the sale of insurance in the state.

   B. This Agreement may be terminated:

      1. At any time by mutual agreement of the parties in writing;

Pls. Exhibit 1

2. By either party, with or without cause, upon providing ninety (90) days prior written notice to the other, or such greater number of days as is required by law. Once written notice of termination has been given by either party, Agency will, immediately upon request of the Company, cease to act or to represent itself in any way as an agent or representative of the Company, but it will receive compensation pursuant to Section XV. from the Company for the period up to and including the specified termination date; or

3. Alternatively, by the Company, with cause, immediately upon providing written notice to Agency. Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a crime. The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination.

### XVIII. OBLIGATIONS UPON TERMINATION OF AGREEMENT:

Except as otherwise provided in a subsequent agreement between Agency and the Company, upon termination of this Agreement, Agency agrees that:

A. Agency will not act or represent itself in any way as an agent or representative of the Company.

B. Agency will immediately return all property belonging to the Company, or dispose of it in such manner as the Company specifies.

C. Agency will immediately cease to use such telephone numbers referenced in Section IX. above and execute an Order of Transfer of Responsibility for such numbers in its or Key Person's name to the Company or to any party the Company designates, and Agency will immediately notify the telephone company of any such transfer. Agency will be responsible for all charges incurred up to the date of execution of the transfer.

D. For a period of one year following termination, neither Agency, nor any of its officers, directors, shareholders, members, or employees, including Key Person or any other persons working in connection with this Agreement, will solicit the purchase of products or services in competition with those sold by the Company:

1. With respect to any person, company, or organization to whom Agency or anyone acting on its behalf sold insurance or other products or services on behalf of the Company and who is a customer of the Company at the time of termination of the Agreement;

2. With respect to any person, company, or organization who is a customer of the Company at the time of termination of this Agreement and whose identity was discovered as a result of Agency's status as a Company agent or as a result of Agency's access to confidential information of the Company; or

3. From any office or business site located within one mile of the agency sales location maintained pursuant to Section V. of this Agreement at the time this Agreement is terminated.

In the event that such one year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph D. conflicts with any existing law, it will be applied to the extent permitted by such law.

E. Agency will immediately cease and desist from any and all use of Company service marks and trade names. Agency will immediately return to the Company all property in its possession or under its control bearing any Company service mark or trade name, or dispose of it in such manner as the Company specifies.

Pls. Exhibit 1

F. Agency recognizes that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. Agency agrees that in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Agency waives any defense to an application for such order, except that the violation did not occur. Agency agrees that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

G. Agency recognizes and acknowledges that each of the foregoing provisions of this Section XVIII. is reasonable and necessary to protect and preserve the legitimate business interests of the Company, its present and potential business activities, and the economic benefits derived therefrom. Agency and Key person recognize and acknowledge that the foregoing provisions are not an undue restraint on Agency or Key Person.

## XIX. PAYMENT TO AGENCY UPON DISSOLUTION:

If at any time following the Company's receipt of notice of Agency's dissolution, the Company shall be obligated under this Agreement to pay money to Agency, the Company is irrevocably authorized to pay such money to Key Person, or in the event of the death or incapacity of Key Person, his executor or personal representative, who shall be responsible to Agency's successors-in-interest for distribution of such payment to the persons or entities legally entitled thereto. Company shall have no liability whatsoever for any payments made pursuant to the foregoing authority regardless of whether Company has received any conflicting demand from any other person or entity, except for payments made by the Company in violation of an order of a court of competent jurisdiction properly served upon the Company which directs the Company not to make any such payment to Key Person and designates an alternate person or entity to which the Company is directed to make such payments.

## XX. NOTICE:

All notices will be deemed to have been given if personally delivered, sent by facsimile transmission, or mailed as follows:

If to the Company:         Allstate Insurance Company

                           _____

                           _____

                           Attention:_____

If to Agency:              _____

                           _____

                           _____

or to such other person or address as any party may furnish or designate to the other in writing.

Pls. Exhibit 1

XXI. **GENERAL PROVISIONS:**

A. Agency warrants and represents that Agency is a [corporation] [limited liability company] duly organized, validly existing and in good standing under the laws of the State of_____ and has all requisite power and [corporate] [limited liability company] authority to enter into this Agreement and to perform Agency's duties and obligations under this Agreement. Agency further warrants and represents that it is duly qualified and in good standing to do business in every jurisdiction in which such qualification is necessary because of the nature of the business conducted by it pursuant to this Agreement.

B. Agency and Key Person warrant and represent that Agency and Key Person have the power, [corporate] [limited liability company] authority, and capacity to enter into and consummate this Agreement. The execution, delivery, and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary [corporate] [limited liability company] action, as applicable, on the part of Agency and Key Person.

C. This Agreement may not be modified except by a written agreement between the Company and Agency which expressly states that it modifies this Agreement. No other written statements, representations, or agreements and no oral statements, representations, or agreements will be effective to modify this Agreement. No representative of the Company will have authority to modify this Agreement, except as provided in this Section XXI. Nothing in this Section will affect the Company's right to amend the Supplement, EA Manual, and Agency Standards, as provided in Section I.C.

D. Agency acknowledges that it has reviewed the Supplement, EA Manual, and Agency Standards and that it has an ongoing responsibility to review all changes to the Supplement, EA Manual and Agency Standards issued by the Company and agrees to be bound by them.

E. References in this Agreement to the Supplement, EA Manual, and Agency Standards are references to the Supplement, EA Manual, and Agency Standards including any changes which may be made from time to time and distributed to Agency by the Company.

F. Agency acknowledges that it has read this Allstate R3001C Exclusive Agency Agreement, understands it, and agrees to be bound by its terms.

G. The authority granted to Agency under this Agreement is nonexclusive. The term "Exclusive" as used in the title of this Agreement refers to the obligations assumed by Agency under Section I.E.

H. The descriptive headings of this Agreement are intended for reference only and will not affect the construction or interpretation of this Agreement.

I. If any provision or part of this Agreement is held invalid for any reason, such invalidity will not affect any other provision or part of this Agreement not held invalid, and such remaining provisions and parts will remain in full force and effect.

J. The failure of either party to insist upon the performance of any of the terms of this Agreement in any one or more instances will not be construed as a waiver or relinquishment of the future performance of any such term. The obligation of the parties with respect to any such future performance will continue in full force and effect.

K. Nothing in this Agreement shall be construed to confer upon any person or entity other than the Company and Agency any rights under this Agreement.

Pls. Exhibit 1

L. This Agreement, and the obligations or rights hereunder, shall not be assignable by Agency except as provided by Section XVI. The rights and obligations of the parties to this Agreement shall be binding upon and inure to the benefit of the Company and its successors and assigns.

M. This Agreement may be executed in counterparts, each of which will be deemed an original.

IN WITNESS WHEREOF, the Company and Agency have caused this Agreement to be executed by their authorized representatives and the parties hereby accept the terms of this Agreement.

ALLSTATE INSURANCE COMPANY

_____
(authorized representative)

_____
(date)

AGENCY

_____
(name)

_____
(Key Person)

_____
(date)

R3001C
APPENDIX A

**CONFIDENTIALITY AND NON-COMPETITION AGREEMENT**
**KEY PERSON**

This Confidentiality and Non-Competition Agreement ("Agreement") is entered into this _____ day of _____, _____, by and between _____ (referred to in this Agreement as "Service Provider"), and _____ (referred to in this Agreement as "Agency"), and Allstate Insurance Company as a direct third party beneficiary of this Agreement (referred to in this Agreement as "the Company").

WHEREAS, the Company has entered into an agency agreement appointing Agency to act as its agent for the purpose of receiving and accepting applications for insurance and for selling certain specified products of the Company's subsidiaries and affiliates; and

WHEREAS, under the terms of the agency agreement, Agency has agreed to maintain the confidentiality of the Company's confidential information; and

WHEREAS, Agency has employed Service Provider to assist Agency in performing services under the agency agreement; and

WHEREAS, Service Provider will have access to certain confidential information of the Company;

NOW, THEREFORE, for and in consideration of the agreements, covenants, and conditions herein contained, the adequacy and sufficiency of which is expressly acknowledged by each of the parties hereto, the parties agree as follows:

1. The terms "employed" or "employment" as referred to in this Agreement apply to any service provided by the Service Provider as an employee, independent contractor, or in any other capacity.

2. Service Provider acknowledges that while assisting Agency in performing services under the agency agreement, Service Provider will have access to or will have disclosed to him/her confidential information concerning the Company, the disclosure of which could be harmful to the Company.

3. Confidential information includes, but is not limited to, business plans of the Company; information regarding the names, addresses, and ages of policyholders or prospective policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public. Confidential information may be oral or recorded on paper, electronic data file, or any other medium.

4. Service Provider agrees that he/she will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information, except upon the written consent of the Company; nor will Service Provider use any confidential information for his/her own benefit, except for the purposes of assisting Agency in performing services under the agency agreement.

5. Any and all confidential information and all Company forms, manuals, records, and other materials and supplies furnished to Service Provider by Agency will at all times remain the property of the Company and will be returned to the Company at any time upon the demand of the Company or upon the termination of Service Provider's employment by Agency.

6. Upon the termination of Service Provider's employment by Agency, Service Provider agrees to treat as confidential and not disclose, either directly or indirectly, to any third party any confidential information of the Company.

1

7. For a period of one year following the termination of Service Provider's employment by Agency, Service Provider agrees not to solicit the purchase of products or services in competition with those sold by the Company:

   1. With respect to any person, company, or organization to whom Agency, or any person employed by Agency, including Service Provider, sold insurance or other products or services on behalf of the Company, and who is a customer of the Company at the time of the termination; or

   2. With respect to any person, company, or organization who is a customer of the Company at the time of the termination and whose identity was discovered as a result of access to confidential information of the Company; or

   3. From any office or business site located within one mile of any locations from which Agency solicited or sold Company insurance or other products or services during the year immediately preceding the termination.

   In the event that such one year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph 7 conflicts with any existing law, it will be applied to the extent permitted by such law.

8. Upon the termination of Service Provider's employment with Agency, Service Provider will immediately cease and desist from any and all use of Company service marks and trade names. Service Provider will immediately return to Agency or the Company all property bearing any company service marks or trade names, or dispose of such materials in the manner specified by the Company. If requested by the Company, Service Provider will execute an Order of Transfer of Responsibility for any telephone numbers in the Service Provider's name, which were used in connection with the conduct of business on behalf of the Company.

9. While employed by Agency, Service Provider agrees that he/she will not either directly or indirectly, solicit, sell or service insurance of any kind for any other company, agent or broker, or refer a prospect to another company, agent or broker without the prior written consent of the Company.

10. Service Provider recognizes that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. Service Provider agrees that in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, will be entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Service Provider waives any defense to an application for such order, except that the violation did not occur. Service Provider agrees that the Company will be entitled to an award of reasonable attorney's fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

11. This Agreement may be executed in counterparts, each of which will be deemed an original. This Agreement supersedes and replaces any prior confidentiality and non-competition agreement between the parties hereto. The parties agree that the use of facsimile signatures for the execution of this Agreement shall be legal and binding and shall have the same full force and effect as if originally signed.

IN WITNESS WHEREOF, the parties hereby accept the terms of this Agreement.

Accepted by:

| SERVICE PROVIDER | AGENCY | ALLSTATE INSURANCE COMPANY |
|---|---|---|
| (Key Person as an Individual) | (Key Person on behalf of Agency) | (authorized representative) |
| (date) | (date) | (date) |

2

R2459A/C-3   04/01/2008

Pls. Exhibit 1

R3001C
APPENDIX B

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Confidentiality and Non-Competition Agreement ("Agreement") is entered into this _____ day of _____, _____, by and between _____(referred to in this Agreement as "Service Provider"), and _____ (referred to in this Agreement as "Agency"), and Allstate Insurance Company as a direct third party beneficiary of this Agreement (referred to in this Agreement as "the Company").

WHEREAS, the Company has entered into an agency agreement appointing Agency to act as its agent for the purpose of receiving and accepting applications for insurance and for selling certain specified products of the Company's subsidiaries and affiliates; and

WHEREAS, under the terms of the agency agreement, Agency has agreed to maintain the confidentiality of the Company's confidential information; and

WHEREAS, Agency has employed Service Provider to assist Agency in performing services under the agency agreement; and

WHEREAS, Service Provider will have access to certain confidential information of the Company;

NOW, THEREFORE, for and in consideration of the agreements, covenants, and conditions herein contained, the adequacy and sufficiency of which is expressly acknowledged by each of the parties hereto, the parties agree as follows:

1. The terms "employed" or "employment" as referred to in this Agreement apply to any service provided by the Service Provider as an employee, independent contractor, or in any other capacity.

2. Service Provider acknowledges that while assisting Agency in performing services under the agency agreement, Service Provider will have access to or will have disclosed to him/her confidential information concerning the Company, the disclosure of which could be harmful to the Company.

3. Confidential information includes, but is not limited to, business plans of the Company; information regarding the names, addresses, and ages of policyholders or prospective policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public. Confidential information may be oral or recorded on paper, electronic data file, or any other medium.

4. Service Provider agrees that he/she will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information, except upon the written consent of the Company; nor will Service Provider use any confidential information for his/her own benefit, except for the purposes of assisting Agency in performing services under the agency agreement.

5. Any and all confidential information and all Company forms, manuals, records, and other materials and supplies furnished to Service Provider by Agency will at all times remain the property of the Company and will be returned to the Company at any time upon the demand of the Company or upon the termination of Service Provider's employment by Agency.

6. Upon the termination of Service Provider's employment by Agency, Service Provider agrees to treat as confidential and not disclose, either directly or indirectly, to any third party any confidential information of the Company.

1

R27394   04/01/2008

Pls. Exhibit 1

7. For a period of one year following the termination of Service Provider's employment by Agency, Service Provider agrees not to solicit the purchase of products or services in competition with those sold by the Company:

   1. With respect to any person, company, or organization to whom Agency, or any person employed by Agency, including Service Provider, sold insurance or other products or services on behalf of the Company, and who is a customer of the Company at the time of the termination; or

   2. With respect to any person, company, or organization who is a customer of the Company at the time of the termination and whose identity was discovered as a result of access to confidential information of the Company; or

   3. From any office or business site located within one mile of any locations from which Agency solicited or sold Company insurance or other products or services during the year immediately preceding the termination.

   In the event that such one year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph 7 conflicts with any existing law, it will be applied to the extent permitted by such law.

8. Upon the termination of Service Provider's employment with Agency, Service Provider will immediately cease and desist from any and all use of Company service marks and trade names. Service Provider will immediately return to Agency or the Company all property bearing any company service marks or trade names, or dispose of such materials in the manner specified by the Company. If requested by the Company, Service Provider will execute an Order of Transfer of Responsibility for any telephone numbers in the Service Provider's name, which were used in connection with the conduct of business on behalf of the Company.

9. While employed by Agency, Service Provider agrees that he/she will not either directly or indirectly, solicit, sell or service insurance of any kind for any other company, agent or broker, or refer a prospect to another company, agent or broker without the prior written consent of the Company.

10. Service Provider recognizes that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. Service Provider agrees that in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, will be entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Service Provider waives any defense to an application for such order, except that the violation did not occur. Service Provider agrees that the Company will be entitled to an award of reasonable attorney's fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

11. This Agreement supersedes and replaces any prior confidentiality and non-competition agreement between the parties hereto. The parties agree that the use of electronic signatures for the execution of this Agreement shall be legal and binding and shall have the same full force and effect as if originally signed.

IN WITNESS WHEREOF, the parties hereby accept the terms of this Agreement.

Accepted by:

| SERVICE PROVIDER | AGENCY | ALLSTATE INSURANCE COMPANY |
|---|---|---|
| (name) | (Key Person) | (authorized representative) |
| (date) | (date) | (date) |

R27394   04/01/2008

2

Pls. Exhibit 1